[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 09-11695
Non-Argument Calendar

————————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 16, 2010
JOHN LEY
CLERK

Agency No. A099-993-196


YONATHAN STALING ACEVEDO-GOMEZ,

                                                                          Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                          Respondent.


————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals

————————————————

(April 16, 2010)


Before EDMONDSON, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Yonathan Staling Acevedo-Gomez, a native and citizen of Venezuela, petitions for review of the order by the Board of Immigration Appeals ("BIA") that affirmed the decision of the Immigration Judge ("IJ"). The decision denied asylum, withholding of removal, and relief under the Convention Against Torture. No reversible error has been shown; we deny the petition.

Acevedo-Gomez sought asylum based on his political opinion: he previously had supported the Fifth Republic movement and the presidential candidacy of Hugo Chavez; but a few years into Chavez's presidency, Petitioner left this movement and began supporting the Justice First party. Because Acevedo-Gomez left the Fifth Republic, its members began harassing him, by making threatening phone calls to him and throwing objects at him. Acevedo-Gomez worked as a deliveryman for a beer distributor. On one occasion, Fifth Republic members tried to attack him at a liquor store; but store employees hid him. A month later, Fifth Republic members again attacked him at a delivery location and beat him. Acevedo-Gomez went to the hospital to receive treatment.

After the beating incident, Acevedo-Gomez believed that members of the Fifth Republic wanted to kill him. So, he quit his job and fled to the United States.

Shortly after he quit his job, Acevedo-Gomez's replacement driver was shot and killed; and Acevedo-Gomez believed that the Fifth Republic was the perpetrator and that he was the intended victim. Two weeks before Acevedo-Gomez's asylum hearing, his brother was killed; he believed the Fifth Republic killed his brother because its members had been harassing his family in Venezuela.

The IJ denied relief because the IJ determined that Acevedo-Gomez was not credible. The IJ based this determination on the inconsistent and evasive nature of Acevedo-Gomez's testimony about his relationship with his wife, and the IJ noted that this relationship called into question his true motivations for leaving Venezuela.[1] The IJ also noted the implausible nature of Acevedo-Gomez's claim and that his submitted evidence did not corroborate the claim. The BIA agreed with the IJ, noting that no clear error existed in the IJ's credibility determination and that the IJ appropriately had considered the totality of the circumstances in making the determination.

Here, we review the BIA's decision because the BIA did not expressly adopt the IJ's decision. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (noting that we review the BIA's decision; but "[i]nsofar as the [BIA] adopts the

---

[1]Acevedo-Gomez and his wife did not marry until after he came to the United States. But they lived together for several years in Venezuela and had a daughter together there. His wife came to the United States years before Acevedo-Gomez did; and later, the daughter joined her in the United States.

IJ's reasoning, we will review the IJ's decision as well"). We review <u>de novo</u> legal determinations of the BIA. <u>Id.</u> A factual determination that an alien is unentitled to relief "must be upheld if it is supported by substantial evidence." <u>Mazariegos v. U.S. Attorney Gen.</u>, 241 F.3d 1320, 1323 (11th Cir. 2001). To reverse a fact determination, we must conclude "that the record not only supports reversal, but compels it." <u>Mendoza v. U.S. Attorney Gen.</u>, 327 F.3d 1283, 1287 (11th Cir. 2003).

Like any fact finding, a credibility determination may not be overturned unless the record compels it. <u>Forgue v. U.S. Attorney Gen.</u>, 401 F.3d 1282, 1287 (11th Cir. 2005) (internal quotation omitted). An adverse credibility determination alone may be sufficient to support the denial of relief. <u>Id.</u> But "an adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant." <u>Id.</u>

On appeal, Acevedo-Gomez argues that the BIA erred in affirming the adverse credibility determination because his testimony was consistent and believable. We disagree. The IJ and BIA provided specific and cogent reasons for the credibility determination, which is supported by substantial evidence. <u>See</u> <u>D-Muhumed v. U.S. Attorney Gen.</u>, 388 F.3d 814, 819 (11th Cir. 2004). Nothing in the record compels us to substitute our judgment on the issue.

As the IJ noted, Acevedo-Gomez testified evasively about his relationship with his wife and was reluctant to explain the history of their relationship. He testified inconsistently about how long and when they lived together in Venezuela, when his wife came to the United States, when his daughter came to the United States, and when he reconciled with his wife once he arrived in the United States. And though Acevedo-Gomez testified that he did not intend to reconcile with his wife when he got to the United States, he immediately called her; and she flew to Texas and rented a car to drive him back to Florida. The couple also conceived a child two months after his arrival. Thus, the IJ correctly questioned Acevedo-Gomez's true motivations in coming to the United States.[2]

And the BIA did not rely only on the testimony about his family relationship to uphold the adverse credibility determination, but also on the inconsistencies in and implausibility of his claim. For instance, (1) Acevedo-Gomez provided no basis for his sudden decision to stop supporting Chavez and provided no documentation to show that he belonged to either the Fifth Republic or Justice First; (2) his testimony about the severity of his injuries did not corroborate the

---

[2]Acevedo-Gomez argues that these inconsistencies do not bear on his asylum claim. But discrepancies and inconsistencies in his testimony did not have to go to the heart of his asylum claim because his asylum application was filed after the REAL ID Act of 2005. See 8 U.S.C. § 1158(b)(1)(B)(iii). And the IJ may make a credibility determination based on the totality of the circumstances and all relevant factors, whether or not inconsistencies and inaccuracies go to the heart of the alien's claim. See Chen v. U.S. Attorney Gen., 463 F.3d 1228, 1231 (11th Cir. 2006).

medical documentation he submitted about the injuries; (3) after his beating, Acevedo-Gomez chose to remain at his employment for a few months instead of coming directly to the United States; and (4) the newspaper article he submitted about the killing of his replacement driver indicated that the driver was killed because he refused to give money to the robbers, not for political reasons.

We briefly address Acevedo-Gomez's arguments about his motions for a continuance and to reopen so that he could introduce -- and the IJ could examine -- the death certificate of his brother and a police report filed by his mother. We review the denial of a motion for a continuance for an abuse of discretion. Zafar v. U.S. Attorney Gen., 461 F.3d 1357, 1362 (11th Cir. 2006). We also review the denial of a motion to reopen[3] for an abuse of discretion. Gbaya v. U.S. Attorney Gen., 342 F.3d 1219, 1220 (11th Cir. 2003).

We conclude that the BIA abused no discretion is denying the motions. Acevedo-Gomez did not request to submit his brother's death certificate until the day of his asylum hearing and had not gotten the certificate translated or copied before the hearing. Thus, Acevedo-Gomez did not show good cause for continuing

---

[3]Before the BIA, Acevedo-Gomez sought to submit additional evidence and to have his case remanded so that the IJ consider this evidence. We construe this request as a motion to reopen because it sought to have the IJ consider evidence not previously presented. See Al Najjar, 257 F.3d at 1301 (stating that where a motion to remand "seeks to introduce evidence that has not previously been presented, it is generally treated as a motion to reopen under [8 C.F.R. § 1003.2(c)]").

the hearing.  <u>See</u> 8 C.F.R. § 1003.29.  And Acevedo-Gomez did not show how the proffered evidence "was not available and could not have been discovered or presented at the former hearing" to justify re-opening his case.  <u>See</u> 8 C.F.R. § 1003.2(c)(1).[4]

PETITION DENIED.

_____

[4]We also conclude that substantial evidence supports the BIA's conclusion that Acevedo-Gomez did not show eligibility for relief under the Convention Against Torture.